## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:21-CR-0129 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES PATTERSON | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Defendant James Patterson ("Patterson") is charged in a one-count

indictment with felon in possession of a firearm and ammunition in violation of 18

U.S.C. § 922(g)(1).  (Doc. 1.)  Patterson moves to dismiss the single-count

indictment based on the argument that Section 922(g)(1) violates the Second

Amendment to the United States Constitution.  (Doc. 58.)  For the reasons that

follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Patterson was charged with a single count of felon in possession of a firearm

and ammunition in violation of 18 U.S.C. § 922(g)(1) on April 28, 2021.  (Doc. 1.)

The Government alleges that on October 8, 2020, detectives working with Dauphin

County Probation Officers for the Harrisburg City Street Crimes Unit were serving

warrants in Harrisburg, Pennsylvania.  (Doc. 64, p. 1.)[1]  Prior to the execution of a

search warrant regarding another individual, Patterson was observed walking from

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

1

the residence that was to be searched with the person who was the subject of the warrant and another individual. (*Id.* at 2.) When Patterson and the two other individuals saw law enforcement, they fled. (*Id.*) Patterson was taken into custody and a *Terry* search was conducted. (*Id.*) Officers located a loaded .38 caliber revolver handgun in Patterson's possession and learned that Patterson was previously convicted of felony offenses. (*Id.*)

Patterson is alleged to have violated Section 922(g)(1) because he possessed this firearm, which was shipped and transported in interstate and foreign commerce, after he was previously convicted of at least one crime punishable by imprisonment for a term of more than one year. (Doc. 1.) The Government asserts that Patterson has numerous convictions that disqualify him from possession of a firearm pursuant to Section 922(g)(1), including 2006 convictions for aggravated assault and carrying a firearm without a license, and a 2017 conviction for felony retaliation against a witness. (*Id.* at 2–3.)

On August 24, 2023, Patterson filed a motion to dismiss the indictment based on the argument that the application of Section 922(g)(1) to him violates the Second Amendment. (Doc. 58.) The motion was fully briefed as of September 6, 2023. (*See* Docs. 59, 64.)

On October 11, 2023, this court entered an order staying the resolution of the motion to dismiss pending the Third Circuit Court of Appeals' review of the

consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023).  (Doc.

68.)  Following the Third Circuit's decision in that appeal, the court directed the

parties to confer and determine whether *Quailes* and *United States v. Moore*, 111

F. 4th 266 (3d Cir. 2024) applied to the facts of this case, namely, whether

Patterson was serving a term of supervised release, probation, or parole for any

state or federal criminal offense at the time when he is alleged to have committed

the 922(g)(1) violations in this case.  (Doc. 98.)  The parties complied and notified

the court that Patterson was not on state or federal probation, parole, or supervision

at the time of the offenses alleged in the indictment.  (Doc. 100.)  Thereafter, the

court directed the parties to submit supplemental briefs to address the impact of

relevant decisions issued while Patterson's motion to dismiss was stayed.  (Docs.

103, 104, 111, 113.)

Patterson is currently in custody and this matter is listed for trial on October

6, 2025.  (Doc. 120.)

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial

motion any defense, objection, or request that the court can determine without a

trial on the merits."  FED. R. CRIM. P. 12(b)(1).  In his pretrial motion to dismiss,

Patterson asserts an as-applied challenge to the constitutionality of Section

922(g)(1).  (*See* Docs. 58, 59, 104, 113.)  In order to resolve an as-applied

challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974).

**DISCUSSION**

### A. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Patterson

Patterson argues that Section 922(g)(1) imposes an unconstitutional infringement of his right to keep and bear arms under the Second Amendment. (*See* Docs. 59, 104, 113.)  He submits that applying the two-part test articulated in *New York State Rifle Association v. Bruen*, 597 U.S. 1 (2022), and applied by the Third Circuit Court of Appeals in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) ("*Range I*"), Section 922(g)(1) impacts his rights as a person protected by the Second Amendment, and that the law is inconsistent with the Nation's historical traditions of firearms regulation.  (Doc. 59, pp. 6–10.)  Further, Patterson argues that Section 922(g)(1) is facially unconstitutional.  (*Id.* at 8–9; Doc. 113, pp. 10–11.)

The Government argues in opposition that *Range I* was wrongly decided[2] and distinguishable from this case in any event.  (Doc. 64, pp. 3–25.)   The

---

[2] In its supplemental brief, the Government does not argue that *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"), is wrongly decided.  The Government has not filed a petition for writ of certiorari from the decision in *Range II* and the time to file has expired.  Thus, it appears that the Government does not contend that *Range II* was wrongly decided, and the court will not address that argument.

Government concedes that Patterson is one of "the people" protected by the

Second Amendment pursuant to *Range*, but argues that Patterson's motion should

be denied for two independent reasons.  (*Id.* at 8–9.)  The Government asserts first

that Patterson fails to maintain that he possessed the firearm for a lawful purpose,

and second that the prohibition on firearm possession in Section 922(g)(1) as

applied to Patterson is supported by relevant historical tradition.  (*Id.* at 9–25.)

In their supplemental briefs, each party addresses the impact of four relevant

decisions issued while Patterson's motion to dismiss was stayed.  (Docs. 104, 111,

113.)  Specifically, the parties address *United States v. Rahimi*, 602 U.S. 680

(2024), *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"),

*United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), and *Pitsilides v. Barr*, 128

F.4th 203 (3d Cir. 2025).

## B. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being

necessary to the security of a free State, the right of the people to keep and bear

Arms, shall not be infringed."  U.S. CONST. amend. II.

### 1. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second

Amendment from the militia-based rationale articulated in *United States v. Miller*,

307 U.S. 174 (1939), to the pre-existing individual right explained in *District of*

*Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010). In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742). And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). To measure consistency with historical firearm regulations, the modern regulation must be "relevantly similar" to historical predecessors. *Id.* at 29. The Court explained that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30. And then, in *Rahimi*, the Court

clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the appropriate analysis . . . [is] whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court rejected the idea that the examination of historical analogues signals "a law trapped in amber." *Id.* at 691.

### 2. Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the appeal filed in the *Range* case. This appeal has traveled a long procedural road to finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania, seeking a declaration that Section 922(g)(1) violates the Second Amendment as applied to him. Applying then-controlling Third Circuit precedent, *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836 F.3d 336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948 F.3d 164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020), the district court granted summary judgment to the Government. *Range v. Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021). Range appealed.

While his appeal was pending, the Supreme Court decided *Bruen*. A Circuit panel affirmed the district court decision, applying *Bruen* and concluding that the Government met its burden to show that Section 922(g)(1) reflects the Nation's historical tradition of firearm regulation. *Range v. Att'y Gen.*, 53 F.4th 262, 266

(3d Cir. 2022) (per curiam).  Range petitioned for rehearing en banc, and the Circuit granted the petition and vacated the panel opinion.  *Range v. Att'y Gen.*, 56 F.4th 992 (3d Cir. 2022).  The en banc court reversed and remanded for the District Court to enter judgment in favor of Range, finding that Range remained one of "the people" protected by the Second Amendment and the Government did not show that the Nation has a longstanding history and tradition of disarming people like Range.  *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range I*").

The Government filed a petition for writ of certiorari.  While that petition was pending, the Supreme Court decided *Rahimi*.  The Court then vacated *Range I* and remanded for further consideration.  *Garland v. Range*, 144 S. Ct. 2706 (2024).

In the second en banc opinion following remand, the Third Circuit reached the same conclusions as in *Range I*.  The Circuit concluded that Bryan Range remains one of "the people" for purposes of the Second Amendment notwithstanding his prior conviction.  *Range II*, 124 F.4th at 226–28.  The Circuit next concluded that Section 922(g)(1) regulates Second Amendment conduct and "'the Constitution presumptively protects that conduct.'"  *Id.* at 228 (quoting *Bruen*, 597 U.S. at 17).  The Circuit then examined whether the Government had shown that applying Section 922(g)(1) to Range would be "'consistent with the

Nation's historical tradition of firearm regulation'" and concluded that it had not carried its burden.  *Id.* (quoting *Bruen*, 597 U.S. at 24).  The Third Circuit concluded its analysis as follows:

> Our decision today is a narrow one.  Bryan Range challenged the constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given his violation of 62 Pa. Stat. Ann. § 481(a).  Range remains one of "the people" protected by the Second Amendment, and his eligibility to lawfully purchase a rifle and a shotgun is protected by his right to keep and bear arms.  More than two decades after he was convicted of food-stamp fraud and completed his sentence, he sought protection from prosecution under § 922(g)(1) for any future possession of a firearm. The record contains no evidence that Range poses a physical danger to others.  Because the Government has not shown that our Republic has a longstanding history and tradition of depriving people like Range of their firearms, § 922(g)(1) cannot constitutionally strip him of his Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil case in which a plaintiff convicted of a felony offense brought suit seeking a declaration that application of Section 922(g)(1) to him would violate the Second Amendment.  *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025).  Upon examination of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases." *Id.* at 210–11.  First, a court's "inquiry into *principles* that underlie our regulatory tradition does not reduce historical analogizing to an exercise in matching elements of modern laws to their historical predecessors."  *Id.* at 210 (emphasis supplied). Second, "whatever other recourse may or may not be available, felons seeking to

challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding." *Id.* Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed." *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). The *Pitsilides* decision makes clear that the "'Second Amendment's touchstone is dangerousness.'" *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J., dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery probative "to the prevailing Second Amendment analysis, including whether Pitsilides poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the

threshold for continued disarmament.   As *Range II* illustrated, consideration of intervening conduct plays a crucial role in determining whether application of § 922(g)(1) is constitutional under the Second Amendment.   *See* 124 F.4th at 232.   Indeed, such conduct may be highly probative of whether an individual likely poses an increased risk of "physical danger to others" if armed.   *Id.*

*Id.* at 212.   That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others."   *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110 F.4th at 1128.)   Further, the Court observed that "both history and common sense reflect that this 'dangerousness' includes not only direct involvement in physical violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing.   *Id.* at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659).   This assessment "necessarily requires individualized factual findings."   *Id*.

The Third Circuit has issued two non-precedential decisions in criminal cases following the decisions in *Range II* that provide additional guidance relevant to this matter.   In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court rejected the Second Amendment challenge to Section 922(g)(1) because White's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate that he 'present[s] a special danger of

11

misus[ing firearms],' and would likely pose an increased risk of 'physical danger to others' if armed." 2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). Looking at White's entire criminal history, the Court concluded that his convictions, considered collectively, show that White would pose a danger to others if armed because his prior criminal activities could lead to violent confrontation. *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that legislatures may disarm those convicted of crimes like drug dealing because such crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025), the Court concluded that the District Court did not commit plain error in rejecting Williams' Second Amendment challenge. That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment. *Id.* Given Williams' "dramatically different criminal record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction. *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1). In *United States v. Moore*, 111 F.4th

266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the

Third Circuit held that "[a] convict completing his sentence on [federal] supervised

release does not have a Second Amendment right to possess a firearm."  And, in

*United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*,

No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to

individuals on state parole or probation.  However, this precedent is not controlling

in this case because the defendant was not on any form of supervision at the time

of the alleged offense conduct.

### C. Application of Relevant Precedent to Defendant's Second Amendment Challenge

#### 1. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to

Defendant and his proposed conduct.  *See Bruen*, 597 U.S. at 31–33; *Range II*, 124

F.4th at 225; *Pitsilides*, 128 F.4th at 209.  Here, the Government concedes that

Patterson remains among "the people" despite his felony convictions.  (Doc. 64, p.

8.)  Rightfully so, based on the controlling precedent in *Range II* concluding that

an individual who has a felony conviction remains among "the people."  *See Range

II*, 124 F.4th at 228.

The Government, however, protests that the Second Amendment does not

apply to Defendant's proposed conduct because he has not attested in this case that

he possessed a gun for a lawful purpose such as self-defense. (Doc. 35, pp. 9–12.) Defendant did not respond to this argument. (*See* Docs. 59, 104, 113.)

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228. The Court then stated: "It does." *Id.* In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year. 18 U.S.C. § 922(1). The statute criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons. And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The Government's argument that Defendant's purpose for possession is relevant may arise from the Circuit's observation that the relief requested in Range's civil suit to possess firearms to hunt and protect himself fit squarely within the constitutional right as defined by *Heller*. *See Range II*, 124 F.4th at 228. But immediately following this observation, the Court then quoted the following portion of the *Heller* decision: "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Range II*, 124 F.4th at 228 (quoting *Heller*, 554 U.S. at 582). Reviewing this paragraph in *Range II* in totality, rather than the sole

sentence about Bryan Range's expressed purpose in filing his declaratory judgment action, the court understands that the Circuit concluded that Section 922(g)(1) regulates Second Amendment conduct because it criminalizes the possession of any firearm or ammunition by a class of persons, regardless of the purpose for the possession (which would include lawful purposes, such as Bryan Range's).

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to him, the Circuit did not address the first *Bruen* question at all, and only addressed the second *Bruen* question.  2025 WL 384112 at *2.  Since *Bruen* instructs that the second step of conducting a historical tradition analysis is only necessary when the person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this may suggest that the Circuit has determined that the first *Bruen* question did not require further discussion in the context of a Second Amendment challenge to Section 922(g)(1).  On the other hand, it may suggest that when a defendant's challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step.  In any event, the Circuit clearly did not analyze whether the defendant in *White* stated a purpose for his possession of a firearm.

## 2. *Bruen* Step Two Analysis

Having determined that the defendant and his conduct are covered by the Second Amendment and presumptively protected, the court must next determine "whether the Government can strip him of his right to keep and bear arms" by analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'" *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*. As detailed previously, the court will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the threshold for continued disarmament." *Pitsilides*, 128 F. 4th at 212. That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the proposition that disarming (at least temporarily) physically dangerous people based

16

on a finding that such person poses a safety threat is consistent with the historical tradition of disarming people who pose a clear threat of physical violence to another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

In conducting this analysis, the court is mindful of the narrowness of the *Range II* holding. The Circuit found only that our Nation's history and tradition do not support permanent disarmament of Bryan Range who only has a two-decades old conviction for food-stamp fraud and there is no evidence of ongoing recidivism or threat of physical danger to others. *See Range II*, 124 F.4th at 232. In assessing whether the criminal record and available background information about the defendant in this case lead to the conclusion that the defendant is, in fact, sufficiently dangerous so that the application of Section 922(g)(1) to him is consistent with the Second Amendment, the court will view Bryan Range as one data point on the dangerousness spectrum, specifically, on the far end of non-dangerousness.

The Government contends that applying Section 922(g)(1) to Patterson is constitutional because his underlying criminal convictions of aggravated assault, carrying a firearm without a license, and retaliation against a witness or victim demonstrate "serious disregard for the rule of law" and "indicate that his firearm possession would pose a danger to himself or others." (Doc. 111, pp. 25–30.)

17

The Government submitted Patterson's rap sheet as an exhibit, which details each of his prior adult convictions, which include 2006 convictions for aggravated assault and carrying a firearm without a license, and a 2017 conviction for felony retaliation against a witness. (*Id*. at 2–3; Doc. 111-1.) The Government submits that these prior convictions are serious and provide a basis to reject Patterson's constitutional challenge based on the demonstrated dangerousness that he would pose to himself or others with firearms. (Doc. 111, pp. 27–29.) In addition, the Government argues that Carter's dangerousness is further demonstrated by his other adult convictions for terroristic threats, simple assault, reckless endangerment, and tampering with or fabricating evidence. (*Id.* at 27.)

Patterson maintains that permanent disarmament through application of Section 922(g)(1) as applied to him is unconstitutional because he was not in custody, on parole, or under any supervision, and was living as "a free, law-abiding citizen." (Doc. 104, p. 6.) He further argues that his prior convictions are in the past, he has not been under supervision since August 2020, and the Government has not met its burden of showing the Nation's historical tradition of permanently disarming a rehabilitated person. (*Id.* at 6–8; Doc. 113, pp. 3–4.)

Having considered both parties' arguments, the court concludes that Patterson's convictions for aggravated assault and carrying a firearm without a license alone demonstrate that Patterson presents a danger of misusing firearms

and would likely pose an increased risk of physical danger to others if permitted to be armed. *See United States v. Walters*, --- F.4th ----, 2025 WL 2536696 (3d Cir. Sept. 4, 2025) (affirming *United States v. Dorsey*, 105 F.4th 526 (3d Cir. 2024), wherein the court found that a conviction for carrying a firearm without a license was not substantially similar to Range's food stamp fraud conviction); *United States v. White*, No. 23-3013, 2025 WL 384112 (3d Cir. Feb. 4, 2025) (holding that defendant's criminal history that included aggravated assault and carrying a firearm without a license demonstrates that he "present[s] a special danger of mis[using firearms]" and would "likely impose an increased risk of 'physical danger to others' if armed"); *United States v. Feliciano*, No. 24-cr-061, 2025 WL 1425477 (W.D. Pa. May 16, 2025) (finding that defendant's aggravated assault conviction demonstrated that he posed a serious physical threat to others if armed); *United States v. Graves*, No. 22-cr-247, 2025 WL 1784933 (W.D. Pa. June 29, 2025) (concluding that a "[t]he crime of assault, in Pennsylvania, establishes a propensity for dangerousness"); *United States v. Roach*, No. 2:24-cr-77, 2025 WL 871618 (E.D. Pa. Mar. 20, 2025) (holding that "even a conviction for simple assault, like the one that Mr. Roach has, demonstrates a defendant's dangerousness"). Defendant's other prior convictions–though not necessarily sufficient individually to establish the requisite degree of dangerousness–when considered in combination with aggravated assault and carrying a firearm without a

19

license, demonstrate Patterson's historical involvement in dangerous and recidivist criminal conduct.

Based on this comprehensive review of Patterson's criminal record, it is clear that Patterson presents a far greater risk of dangerousness than Bryan Range if permitted to be armed. Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Patterson.

Patterson's argument that Section 922(g)(1) is facially unconstitutional also fails. (*See* Doc. 59, pp. 8–9; Doc. 113, pp. 10–11.) A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a [party] to 'establish that no set of circumstances exists under which the Act would be valid.'" *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). But, here, Section 922(g)(1) is constitutional as applied to Patterson. Thus, there is at least one set of circumstances under which Section 922(g)(1) is valid.

## CONCLUSION

For the foregoing reasons, Patterson's motion to dismiss the indictment, Doc. 58, will be denied. An implementing order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: September 22, 2025